JENNY SCHWARTZ (SBN 135932)
Outten & Golden LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jschwartz@outtengolden.com

TAMMY MARZIGLIANO
(*pro hac vice* pending)
AMY BIEGELSEN
(*pro hac vice* pending)
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 11216
Telephone: (212) 245-1000
Facsimile: (646) 952-9105
E-mail: tm@outtengolden.com
          abiegelsen@outtengolden.com

Attorneys for Plaintiff
DEBORAH FAJANS

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DEBORAH FAJANS,<br><br>    Plaintiff,<br><br>    v.<br><br>ALAMEDA HEALTH SYSTEM and HIGHLAND HOSPITAL,<br><br>    Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>1. Retaliation (Federal False Claims Act, 31 U.S.C. § 3730(h))<br>2. Retaliation (California False Claims Act, Cal. Gov't Code, § 12653)<br>3. Retaliation (Cal. Health & Safety Code § 1278.5)<br>4. Retaliation (Cal. Lab. Code § 1102.5(b))<br>5. Retaliation (Termination in Violation of Public Policy)<br><br>**UNLIMITED JURISDICTION (AMOUNT IN CONTROVERSY EXCEEDS $25,000)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Deborah Fajans alleges as follows:

## NATURE OF THE ACTION

1. This is a whistleblower retaliation action brought by Plaintiff Deborah Fajans against her employer Defendant Alameda Health System (AHS), which owns and operates the hospital where she worked, Defendant Highland Hospital (the Hospital).

2. Ms. Fajans is a well-regarded and long-tenured nurse anesthetist.

3. In mid-2015, Ms. Fajans discovered that doctors were routinely overbilling insurance programs, including government-funded health care programs, for their services. Dr. Jill Antoine, a Hospital anesthesiologist, was among those engaged in this practice.

4. After Ms. Fajans confronted Dr. Antoine about her overbilling and reported it to a superior, Dr. Antoine began to retaliate against Ms. Fajans by continuously treating her with overt hostility. The retaliation culminated in an incident on March 15, 2019: during an operation that Ms. Fajans and Dr. Antoine were both staffed on, Ms. Fajans observed Dr. Antoine engage in conduct that threatened a patient's safety and violated other laws, rules, and regulations governing the practice of medicine. Ms. Fajans immediately reported the incident to her department head over text and in a detailed email two days later.

5. The Hospital put Ms. Fajans on an unpaid suspension on May 30, 2019. The cause of the suspension was purportedly a disciplinary complaint filed by Dr. Antoine alleging that Ms. Fajans behaved unprofessionally during the March 15 incident.

6. Upon information and belief, the Hospital has not investigated either Ms. Fajans' patient safety charge against Dr. Antoine, or Dr. Antoine's disciplinary charge against Ms. Fajans. Nevertheless, Ms. Fajans has remained on unpaid leave since May 30, 2019.

7. Accordingly, Ms. Fajans brings this action against Defendants for retaliating against her in the terms and conditions of her employment in violation of: (1) the Federal False Claims Act (FCA), 31 U.S.C. § 3730(h); (2) the California False Claims Act (CFCA), Cal. Gov't Code, § 12653); (3) Cal. Health & Safety Code § 1278.5; (4) Cal. Lab. Code § 1102.5(b); (5) and public policy, as recognized by the common law of California in *Tameny v. Atl. Richfield Co.*, 610 P.2d 1330 (1980) (*Tameny* claim).

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over Ms. Fajans' False Claims Act retaliation claim pursuant to 31 U.S.C. § 3730(h); and diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Ms. Fajans is a citizen of the State of Nevada, Defendants' principal place of business is California, and the damages at issue exceed $75,000.

9. This Court has supplemental jurisdiction over Ms. Fajans' state law claims pursuant to 28 U.S.C. § 1367 because these claims are so closely related to Ms. Fajans' federal FCA claim that they form part of the same case or controversy under Article III of the U.S. Constitution.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Ms. Fajans' claims occurred in this district and Defendants conducts business within this district.

**PARTIES**

11. Plaintiff Deborah Fajans is an individual and was a resident of the County of Placer, California from the time of her hiring at the Hospital until 2020, when she relocated to Reno, Nevada.

12. Defendant Alameda Health System (AHS) owns and operates a group of medical facilities including Defendant Highland Hospital. AHS is located at 1411 E. 31st St., Oakland, CA 94602.

13. Defendant Highland Hospital (the Hospital) is located at 1411 E. 31st St., Oakland, CA 94602.

14. At all times relevant to this litigation, Ms. Fajans has been a health care worker and an employee of Defendants within the meaning of the relevant statutes and common law claim cited herein.

15. At all times relevant to this litigation, AHS has been the owner of a health facility and Ms. Fajans' employer within the meaning of the relevant statutes and common law claim cited herein.

16. At all times relevant to this litigation, the Hospital has been a health facility and Ms. Fajans' employer within the meaning of the relevant statutes and common law claim cited herein.

17. The Hospital is a "Disproportionate Share Hospital," which serves a significantly disproportionate number of low-income patients, and receives payments from the Centers for Medicaid and Medicare Services to cover the costs of providing care to uninsured patients.

18. It is well known by Hospital staff that the vast majority of the Hospital's patients are covered by government health insurance programs, including Medicare (federally funded health coverage primarily for individuals 65 and over, regardless of income), and Medi-Cal (California's state-run and funded Medicaid program, primarily for low income families).

## FACTUAL ALLEGATIONS

### Highland Retaliated Against Ms. Fajans Because of Her Protected Disclosures.

19. Ms. Fajans is a Certified Registered Nurse Anesthetists (CRNA), which permits her to administer anesthesia to patients, even without a physician's supervision.

20. Ms. Fajans has been a dedicated and hardworking employee since the Hospital hired her in 2011.

21. In or about early 2015, Ms. Fajans noticed that Hospital physicians, including Hospital anesthesiologist Dr. Jill Antoine, would indicate in their charting that they were engaged in "medical direction" for a procedure on occasions when Ms. Fajans was performing the "induction and emergence," (i.e. controlling the drugs to put a patient under and wake them back up) and the physician was not present.

22. It is appropriate for a CRNA to perform the induction and emergence phases when the physician is out of the room, but the doctor is then only able to bill health insurance plans, including Medicare and Medi-Cal, for "medical supervision" rather than "medical direction."

23. Insurance plans, including Medicare and Medi-Cal, pay less for "medical supervision" than they do for "medical direction."

24. Nevertheless, Dr. Antoine would routinely overstate her degree of involvement in her charting, which Ms. Fajans believed resulted in the Hospital overbilling insurance plans, including Medicare and Medi-Cal.

25. Ms. Fajans began indicating in her charting when Dr. Antoine was and was not present during induction and emergence, or other phases required for Dr. Antoine to bill for "medical direction."

26. In or around early 2015, Ms. Fajans confronted Dr. Antoine about her practice of misrepresenting her degree of involvement in certain procedures, but Dr. Antoine continued to do it.

27. On June 16, 2015, Ms. Fajans escalated her concerns to Shandonna Stewart, the acting head of the Operating Room at the time. In this position, Ms. Stewart was responsible for all operating room staffing and operations. Ms. Fajans sent Ms. Stewart an email with the subject line "Billing fraud" and reported that "[t]here is a provider illegally billing for medical direction."

28. In the email to Ms. Stewart, Ms. Fajans noted that she was concerned that her report could result in retaliation, and that she would be "gotten rid of and not given hours." Ms. Stewart forwarded Ms. Fajans' email to the Hospital's Compliance Department.

29. Ms. Fajans also reported her concerns about billing fraud to the Hospital's compliance hotline.

30. Hospital medical staff all undergo annual trainings that address billing fraud, and appropriate Medicare and Medi-Cal billing practices are routinely addressed in continuing education courses that anesthesiologists and CRNAs must attend to maintain their licenses.

31. Although the Hospital apparently declined to self-report the false Medicare billing to the government, it reminded the doctors involved about the relevant billing requirements, and developed and delivered training to the anesthesia staff.

32. From then on, Dr. Antoine began a campaign of continuous harassment against Ms. Fajans. Dr. Antoine was rude to Ms. Fajans and would raise her voice at her, and even physically shoved her.

33. In or about 2017, Dr. Jordan Newmark took over as the Chief of the Anesthesia Department. In that role, Dr. Newmark was responsible for managing all of the physicians and CRNAs in the department.

34. Shortly after his arrival at the Hospital, Dr. Newmark met with Ms. Fajans. Ms. Fajans informed him that she believed that Dr. Antoine treated her with hostility, and was an unsafe provider. Ms. Fajans informed Dr. Newmark that she feared that working with Dr. Antoine could jeopardize Ms. Fajans' CRNA and nursing licenses.

35. Dr. Antoine's retaliation against Ms. Fajans culminated on March 15, 2019 when Ms. Fajans was the CRNA on a case with Dr. Antoine (the "March 15 incident").

36. During the March 15 incident, Ms. Fajans was responsible for the induction. While Ms. Fajans was adjusting the drug levels in response to a routine blood-pressure drop, Dr. Antoine announced that the patient was coding. Ms. Fajans informed Dr. Antoine that she was treating the low blood pressure and that the patient was not coding. After less than a minute of waiting for a new reading of the blood pressure, Dr. Antoine claimed that there was no pulse and instructed Ms. Fajans to give the patient additional drugs. Ms. Fajans refused because she and the surgery resident could both feel a pulse, and because introducing new medication so soon after those that had just been injected would endanger the patient. Almost immediately, the patient's blood pressure stabilized.

37. After the patient's blood pressure stabilized, Dr. Antoine ejected Ms. Fajans from the operating room and would not allow Ms. Fajans to complete charting the drugs she had just given the patient.

38. Although Ms. Fajans was concerned for the patient's safety and believed she was legally obligated to complete her charting contemporaneously, she complied.

39. Shortly after Ms. Fajans left the room, Dr. Antoine announced that the patient was coding and administered chest compressions and V-tach shock. If unnecessary, such procedures pose grave threats to a patient's health and safety.

40. Shortly after leaving the operating room, Ms. Fajans initiated a text exchange with Dr. Newmark in which she recounted Dr. Antoine's actions in the operating room and relayed

her concern about the risk to the patient's safety. She also asked how to make sure that the drugs that she introduced before being injected from the operating room were included in the chart.

41. In the March 15, 2019 text exchange, Dr. Newmark instructed Ms. Fajans to send an email detailing the occurrence and indicated that he would "work in [sic] the situation." Dr. Newmark also informed Ms. Fajans that the Hospital had not renewed Dr. Antoine's contract and she would be leaving the Hospital in April 2019.

42. On March 17, 2019 Ms. Fajans sent an email detailing the March 15 incident, and indicating that she was concerned about how working with Dr. Antoine could impact her license. Dr. Newmark forward the email to Theresa Cooper, Vice President of Patient Care Services.

43. On March 20, 2019, Ms. Cooper responded, stating that she was concerned about harassment and patient safety and care.

44. Upon information and relief, Dr. Antoine left the Hospital in April 2019.

45. In a letter dated May 30, 2019, the Hospital notified Ms. Fajans that she was being put on administrative leave until further notice. The letter offered no explanation for why.

46. On June 18, 2019, Ms. Fajans met with Dr. Newmark and Paul Liem, from Highland's HR department, where she learned for the first time that she had been suspended because Dr. Antoine had filed a complaint against her, alleging that she had behaved unprofessionally during the March 15 incident.

47. During the June 18, 2019 meeting, Mr. Liem asked for information about the March 15 incident that had already been outlined in the March 15 and 17, 2019 texts and email that Ms. Fajans sent to Dr. Newmark and others.

48. On June 24, 2019, Ms. Fajans provided Mr. Liem a list of physicians who could attest to her high quality of care, as well as the text chain she sent to Dr. Newmark on March 15, 2019.

49. On November 4, 2019, Mr. Liem indicated that he would be concluding his investigation in mid-November.

50. As of September 2020, the Hospital has not provided any further substantive update on the status of the investigation into Dr. Antoine's complaint against Ms. Fajans, despite several requests for information.

51. As of September 2020, upon information and belief, the Hospital has not investigated Ms. Fajans' reports regarding Dr. Antoine's conduct during the March 15 incident.

52. As of the filing of this Complaint, Ms. Fajans remains on unpaid administrative leave.

53. As a direct result of the Hospital's conduct, Ms. Fajans has suffered economic and non-economic harm (including severe emotional injury including depression, sleeplessness, and weight gain), and reputational harm (as a result of being on an unpaid and unexplained administrative leave for over a year, which has impaired her ability to find other work).

**FIRST CAUSE OF ACTION**
**Retaliation - Federal False Claims Act, 31 U.S.C. § 3730(h)**
**Against All Defendants**

54. Plaintiff incorporates, by reference, her allegations from each of the preceding paragraphs.

55. In 2015, Ms. Fajans reported and opposed the practice of Hospital physicians, including Dr. Antoine, overstating their services in their charting.

56. Such conduct could cause false claims for payment to be submitted to the federal government.

57. It is well-known by all Hospital staff that the vast majority of the Hospital's patients are uninsured or covered by government health insurance programs, including Medicare (federally funded health coverage primarily for individuals 65 and over, regardless of income).

58. After Ms. Fajans reported this practice, Dr. Antoine began to continuously harass Ms. Fajans in retaliation for her report, culminating in a retaliatory disciplinary complaint against Ms. Fajans in 2019.

59. In response to Dr. Antoine's complaint, the Hospital put Ms. Fajans on unpaid administrative leave without conducting any substantive investigation.

60. As a direct and proximate result of the Hospital's unlawful conduct, Ms. Fajans has suffered, and will continue to suffer, economic and non-economic harm for which the Hospital is liable, including but not limited to 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the retaliation, including litigation costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
**Retaliation - California False Claims Act, Cal. Gov't Code, § 12653**
**Against All Defendants**

61. Plaintiff incorporates, by reference, her allegations from each of the preceding paragraphs.

62. In 2015, Ms. Fajans reported and opposed the practice of Hospital physicians, including Dr. Antoine, overstating their services in their charting.

63. Such conduct could cause false claims for payment to be submitted to the state government.

64. It is well-known by all Hospital staff that the vast majority of the Hospital's patients are uninsured or covered by government health insurance programs, including Medi-Cal (California's state-run and funded Medicaid program, primarily for low income families).

65. After Ms. Fajans reported this practice, Dr. Antoine began to continuously harass Ms. Fajans in retaliation for her report, culminating in a retaliatory disciplinary complaint against Ms. Fajans in 2019.

66. In response to Dr. Antoine's complaint, the Hospital put Ms. Fajans on unpaid administrative leave without conducting any substantive investigation.

67. As a direct and proximate result of the Hospital's unlawful conduct, Ms. Fajans has suffered, and will continue to suffer, economic and non-economic harm for which the Hospital is liable, including but not limited to back pay, interest on the back pay, compensation for any special damages sustained as a result of the discrimination, punitive damages, and attorneys' fees.

**THIRD CAUSE OF ACTION**
Retaliation - Cal. Health & Safety Code, § 1278.5
**Against All Defendants**

68. Plaintiff incorporates, by reference, her allegations from each of the preceding paragraphs.

69. On March 15 and March 17, 2019, Ms. Fajans reported to the medical staff, and initiated an investigation into, the quality of care or services, that Dr. Antoine was providing, and the conditions she was creating.

70. On May 30, 2019, fewer than 120 days later, the Hospital put Ms. Fajans on unpaid administrative leave.

71. As a direct and proximate result of the Hospital's unlawful conduct, Ms. Fajans has suffered, and will continue to suffer, economic and non-economic harm for which the Hospital is liable, including lost wages and benefits, and legal costs and fees.

**FOURTH CAUSE OF ACTION**
Retaliation - Cal. Lab. Code § 1102.5(b)
**Against All Defendants**

72. Plaintiff incorporates, by reference, her allegations from each of the preceding paragraphs.

73. Ms. Fajans' reports to the Hospital in 2015 (regarding Dr. Antoine's misrepresentations in billing); 2017 (when she informed Dr. Newmark that Dr. Antoine was an unsafe provider that endangered Ms. Fajans' license); and in 2019 (when she reported the March 15 incident and raised concerns about her license), implicate laws and regulations including 31 U.S.C. § 3730(h), Cal. Gov't Code, § 12653, Cal. Health & Safety Code, § 1278.5, Bus. & Prof. Code §§ 2262, 2266, 2282, 2725, *et seq.* and the guidelines promulgated by the Board of Registered Nursing and the Medical Board of California, *see* Bus. & Prof. Code, § 2725, subd. (c) and Cal. Code Regs., tit. 16, § 1470–1474.

74. As a direct and proximate result of the Hospital's unlawful conduct, Ms. Fajans has suffered, and will continue to suffer, economic and non-economic harm for which the Hospital is liable, including lost wages and benefits, and legal costs and fees.

### FIFTH CAUSE OF ACTION
**Common Law Termination in Violation of Public Policy**
**Against All Defendants**

75. Plaintiff incorporates, by reference, her allegations from each of the preceding paragraphs.

76. At all times relevant herein, Plaintiff was an employee as recognized by California common law.

77. At all times relevant herein, the Hospital was an employer as recognized by California common law.

78. On information and belief, the Hospital has investigated neither Ms. Fajans' reports about patient safety, nor Dr. Antoine's complaint against Ms. Fajans. Further, the Hospital has refused to schedule Ms. Fajans for any further shifts since the May 29, 2019 suspension.

79. Ms. Fajans' reports to the Hospital in 2015 (regarding Dr. Antoine's misrepresentations in billing); 2017 (when she informed Dr. Newmark that Dr. Antoine was an unsafe provider that endangered Ms. Fajans' license); and in 2019 (when she reported the March 15 incident and raised concerns about her license), implicate laws and regulations including 31 U.S.C. § 3730(h), Cal. Gov't Code, § 12653, Cal. Health & Safety Code, § 1278.5, Bus. & Prof. Code §§ 2262, 2266, 2282, 2725, *et seq.* and the guidelines promulgated by the Board of Registered Nursing and the Medical Board of California, *see* Bus. & Prof. Code, § 2725, subd. (c) and Cal. Code Regs., tit. 16, § 1470–1474.

80. As a direct and proximate result of the Hospital's unlawful conduct, Ms. Fajans has suffered, and will continue to suffer, economic and non-economic harm for which the Hospital is liable, including lost wages and benefits, damages to her reputation, pain and suffering, humiliation, embarrassment, and emotional distress, and legal costs and fees.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For compensatory damages including double backpay, future lost wages, earnings, and all other sums of money, together with interest on these amounts at prevailing rates and according to proof;

2. For general, special, and incidental damages and amounts for emotional and physical distress, and reputational harm according to proof;

3. For punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendants;

4. For prejudgment interest and interest on the sum of damages awarded to the maximum extent permitted by law;

5. For reasonable attorneys' fees and costs of suit herein incurred pursuant to 31 U.S.C. § 3730(h); Cal. Gov't Code, § 12653; Cal. Health & Safety Code, § 1278.5; Cal. Lab. Code § 1102.5(b) and Cal. Civ. Proc. Code § 1021.5;

6. For such other and further relief as the Court deems proper.

Dated: September 30, 2020

Respectfully submitted,

By: _____
JENNIFER SCHWARTZ
TAMMY MARZIGLIANO
AMY BIEGELSEN
Outten & Golden LLP

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiff Deborah Fajans hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: September 30, 2020

Respectfully submitted,

By: _____
JENNIFER SCHWARTZ
TAMMY MARZIGLIANO
AMY BIEGELSEN
Outten & Golden LLP

*Attorneys for Plaintiffs*